IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No. 06-cv-02373-LTB

IN RE:

DAVID BRIAN RIGGLE,

      Debtor.

LONN ELLETSON and
NANCY ELLETSON,

      Appellees-Plaintiffs,

v.

DAVID BRIAN RIGGLE,

      Appellant-Defendant.
_____

MEMORANDUM OPINION AND ORDER
_____

Babcock, J.

      Appellant, David Brian Riggle, appeals, in part, that portion of the United States Bankruptcy Court for the District of Colorado's September 19, 2006 Order granting Appellee-Plaintiffs' Motion for Summary Judgment holding that under the doctrine of collateral estoppel—to the extent the state court specifically found $260,293.20 in damages to be the result of Appellant's fraudulent misrepresentations, deceit, and fraud—the judgment debt of Appellant is non-dischargeable under 11 U.S.C. § 523(a)(2)(A). Oral argument would not materially assist in the determination of this motion. After consideration of the record and the parties' briefs, and for the reasons set forth below, I REVERSE and REMAND.

## I. FACTS

In September 2001, Appellees entered into a homebuilding contract with Appellant and Appellant's construction company, Riggle Construction Co. As a result of disputes arising out of this contract, Appellees filed suit against Appellant in Teller County District Court in October 2003 alleging fraud, misrepresentation, conversion, and breach of contract, among other claims ("state proceeding"). On March 2, 2005 Appellees filed a verified Motion for Summary Judgment asserting Appellant's failure to respond to the underlying complaint resulted in no genuine issue as to any material fact and thereby entitled Appellees to default judgment on each claim. Appellant did not respond to Appellees' Motion for Summary Judgment. After reviewing Appellees' Motion and attached affidavits, the court entered judgment on behalf of Appellees in the amount of $282,358.20 on March 18, 2005 ("state judgment"). Of this amount, $37,915.00 was granted for breach of contract and $266,293.20 was granted for those claims arising out of Appellant's acts of fraud, misrepresentation, and conversion.

On September 23, 2005, Appellant filed for protection pursuant to Chapter 7 of the Bankruptcy Code. On January 6, 2006, Appellees filed an adversary proceeding complaint in the Bankruptcy Court asserting that the $266,293.20 was non-dischargeable under 11 U.S.C. §§ 523(a)(2), 523(a)(4), and 523(c). Appellees stated both they and Appellant engaged in sufficient litigation of the facts and issues in the state proceeding such that the state judgment should be given collateral estoppel effect, or, in the alternative, requested they be allowed to prove the $266,293.20 non-dischargeable under 11 U.S.C. §§ 523(a)(2), 523(a)(4), and 523(c) at trial. Appellant responded on February 8, 2006, admitting those allegations regarding the existence of the building contract and the state proceeding and state judgment, but denying all other

2

allegations.

On April 18, 2006, Appellees filed a verified Motion for Summary Judgment in the Bankruptcy Court arguing the state judgment should be given collateral estoppel effect because (1) the parties to the state and Bankruptcy Court proceedings were identical; (2) final judgment was entered in the state proceeding; (3) Appellees' claims of fraud, fraudulent misrepresentation, false pretenses, and conversion were actually litigated in the state proceeding; and (4) Appellant had a full and fair opportunity to litigate his claims in the state proceeding.  Appellant responded on June 7, 2006, asserting the state judgment should not be given collateral estoppel effect because it was based on a default judgment arising from an unopposed motion for summary judgment.  Thus, the underlying claims of fraud, fraudulent misrepresentation, false pretenses, and conversion were not actually litigated in the state proceeding.  Appellant also asserted the state judgment was procured by fraud on the part of Appellees and this raised an issue of material fact precluding summary judgment.

On September 19, 2006, the Bankruptcy Court granted partial summary judgment in favor of Appellees in the amount of $260,293.20, finding the issue of fraud was actually litigated in the state proceeding.  The Bankruptcy Court determined that Appellant did not dispute that: 1) $244,433.20 in damages were caused to Appellees by Appellant's actions constituting fraudulent misrepresentation and false pretenses under Colorado law; 2) $15,850.00 in damages were caused by Appellant's actions constituting fraud and deceit under Colorado Law; and 3) $6,000.00 in damages were caused by Appellant's actions constituting fraud and conversion under Colorado law. (This totals $266,283.32, not $266,293.3.  The ten dollar difference is immaterial to my analysis and *de minimis*.)  The court denied summary judgment as to the remaining $6,000.00

awarded in the state judgment for "fraud and conversion" because it was unclear whether the $6,000.00 was awarded as damages for fraud or as damages for conversion, and because the tort of conversion under Colorado law does not require the fraudulent or wrongful intent necessary for a determination of non-dischargeability under 11 U.S.C. § 523(a)(4). This appeal followed.

## II. STANDARD OF REVIEW

In reviewing a bankruptcy court's decision, the district court functions as an appellate court and is authorized to affirm, reverse, modify or remand the bankruptcy court's ruling. 28 U.S.C. § 158(a); FED. R. BANKR. P. 8013. A bankruptcy court's entry of summary judgment barring claims under the doctrine of collateral estoppel is examined *de novo*, viewing the record in the light most favorable to the nonmoving party and drawing all inferences in that party's favor. *Dodge v. Cotter Corp.*, 203 F.3d 1190, 1197 (10th Cir. 2000); *In re Amdura Corp.*, 167 B.R. 640, 643 (D. Colo. 1994). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c) (made applicable to bankruptcy proceedings by FED. R. BANKR. P. 7056); *see also In re M & L Bus. Mach. Co., Inc.,* 194 B.R. 496, 500 (D. Colo. 1996).

## III.  COLLATERAL ESTOPPEL EFFECT OF THE STATE JUDGMENT

Appellant's first argument on appeal is that the Bankruptcy Court erred when it accorded the state judgment collateral estoppel effect because the issue of fraud was not actually litigated in the state proceeding. Appellant's second argument is that, even if the issue of fraud was actually litigated, the state judgment should not be accorded collateral estoppel effect because the issue of

4

Appellant's fraud was not fully and fairly litigated in the state proceeding.  I agree with Appellant on both points.

### A.  Collateral estoppel under Colorado law

While the bankruptcy courts retain exclusive jurisdiction to determine whether a debt is non-dischargeable under 11 U.S.C. §§ 523(a)(2) and 523(a)(4), *see In re McKendry*, 40 F.3d 331, 335 (10th Cir. 1994), the doctrine of collateral estoppel may be invoked to bar relitigation of factual issues determined in a prior judgment.  *See In re Wallace*, 840 F.2d 762, 764 (10th Cir. 1988).  When a federal court considers the collateral estoppel effect of a prior state court judgment, the full faith and credit provision of 28 U.S.C. § 1738 requires the federal court to give the state court judgment the same preclusive effect as the state rendering the judgment would give.  *See Bolling v. City & County of Denver*, 790 F.2d 67, 68 (10th Cir. 1986).  Nonetheless, collateral estoppel is an equitable doctrine applied at the court's discretion and need not be applied in every case in which it could be applied.  *Arapahoe County Public Airport Auth. v. F.A.A.*, 242 F.3d 1213, 1220 (10th Cir. 2001); *W. Group Nurseries, Inc. v. Pomeranz*, 867 P.2d 12, 15 (Colo. Ct. App. 1993).

As this appeal arises out of a judgment of a Colorado District Court, Colorado law determines the preclusive effect of the state judgment.  Under Colorado law, the doctrine of collateral estoppel "bars relitigation of an issue if: (1) The issue precluded is identical to an issue actually litigated and necessarily adjudicated in the prior proceeding; (2) The party against whom estoppel was sought was a party to or was in privity with a party to the prior proceeding; (3) There was a final judgment on the merits in the prior proceeding; (4) The party against whom the doctrine is asserted had a full and fair opportunity to litigate the issues in the prior proceeding."

*Bebo Constr. Co. v. Mattox & O'Brien, P.C.*, 990 P.2d 78, 84–85 (Colo. 1999).

There is some dispute between the parties whether the state judgment at issue here is properly a summary judgment or a default judgment. As noted in the state judgment, Appellees' motion for summary judgment in the state proceeding was unopposed. A court may treat a failure to oppose a summary judgment as just a form of default judgment. *See In re Dvorak*, 118 B.R. 619, 626 (Bankr. N.D. Ill. 1990). This seems to be what occurred in the state proceeding here. Although the state judgment uses the term "summary judgment," both parties refer to the state judgment as a default judgment throughout their appellate briefs. Further, in their Motion for Summary Judgment in the state proceeding, Appellees' (there Plaintiffs) request for relief states: "The Defendants failed to respond to Plaintiffs' second amended complaint[;] as such the Court should enter a default judgment in favor of the Plaintiffs."

In Appellant's view, a bankruptcy court may never give collateral estoppel effect to a default judgment because the underlying issues were not actually litigated in the prior state action. Some states agree with Appellant's position. *See Stephan v. Rocky Mountain Chocolate Factory, Inc.*, 136 F.3d 1134, 1138–39 (7th Cir. 1998) (discussing pre-*Bebo* Colorado cases). Colorado does not.

The Colorado Supreme Court is the final authority on Colorado law. *See Fid. Union Trust Co. v. Field*, 311 U.S. 169, 177–78 (1940). When I am called upon to interpret Colorado law, I first look to rulings of the Colorado Supreme Court. *Lovell v. State Farm Mut. Auto. Ins. Co.*, 466 F.3d 893, 899 (10th Cir. 2006). If no applicable rulings exist, I must endeavor to predict how the Court would rule. *Id*. In such circumstances, I must follow any intermediate state court decision unless other authority demonstrates the Colorado Supreme Court would decide

otherwise. *Daitom, Inc. v. Pennwalt Corp.*, 741 F.2d 1569, 1574 (10th Cir. 1984). The policies underlying the applicable legal doctrines, the doctrinal trends indicated by these policies, and the decisions of other courts may also inform my analysis. *Id.* at 1574–75.

The Colorado Supreme Court applies the four-part collateral estoppel test from *Bebo Construction Co. v. Mattox & O'Brien, P.C.*, *supra*, [hereinafter "*Bebo* analysis"] to prior summary judgments, *see Carpenter v. Young*, 773 P.2d 561, 568 (Colo. 1989), and consent judgments, *see Bennett Coll. v. United Bank of Denver*, 799 P.2d 364 (Colo. 1990), but has not yet determined the collateral estoppel effect accorded to prior default judgments. The Colorado Court of Appeals decided before *Bebo* that where a "default judgment has been entered against a party who later seeks to litigate an issue disposed of in the prior litigation, the subsequent action is barred" by the doctrine of collateral estoppel. *Ortega v. Bd. of County Comm'rs of Costilla County*, 683 P.2d 819, 820–21 (Colo. Ct. App. 1984). *Ortega* appears to hold that collateral estoppel bars the relitigation of any issue decided by a prior default judgment, "regardless of the extent of the defaulting party's participation in the earlier lawsuit." *See Stephan*, *supra*, 136 F.3d at 1138.

In *In re McMahon*, applying Colorado law, the court reviewed *Ortega* in the light of Colorado Federal District Court law and concluded that a default judgment does not necessarily have preclusive effect. *See In re McMahon*, 356 B.R. 286 (Bankr. N.D. Ga. 2006). The *McMahon* court held that *Ortega*—although discussing collateral estoppel—actually applied the doctrine of *res judicata* to the matter before it. *See id.* at 294–96. As a result, *McMahon* teaches that Colorado courts would not apply collateral estoppel to a default judgment when the debtor did not defend at all because the underlying issues would not actually be litigated, as required by

7

part one of *Bebo*'s four-part collateral estoppel analysis. *See id*. at 296.  Rather, a default judgment may be given preclusive effect when the debtor participates in pretrial proceedings and the issues are fully decided on the merits through the pleadings and discovery.

I find *McMahon*'s thorough analysis of *Ortega* persuasive.  Although *Ortega* used the term "collateral estoppel," its language and reasoning demonstrate that the court actually applied *res judicata* to the prior default judgment.  *Ortega* applied the four-part collateral estoppel test announced in *Pomeroy v. Waitkus*, 517 P.2d 396, 399 (Colo. 1973), but omitted any consideration of whether the issues were actually litigated.  *Ortega*, 638 P.2d at 821.  As both *Pomeroy* and *Bebo* emphasize, the "actually litigated" requirement is a fundamental part of the collateral estoppel analysis that distinguishes it from *res judicata*.  *See Bebo Constr. Co.*, *supra*, 990 P.2d at 85–86; *Pomeroy*, 517 P.2d at 399.  Further, by precluding relitigation of issues that "might have been litigated in the first action but were not," *Ortega* clearly applied the *res judicata* bar, not collateral estoppel.  *Ortega*, 683 P.2d at 821; *see Pomeroy*, 517 P.2d at 399 (holding that *res judicata* precludes relitigation of issues that might have been litigated in a prior action, but collateral estoppel only precludes those issues that were actually litigated).  Therefore, I agree with *McMahon* that, properly read, *Ortega* does not control the collateral estoppel effect Colorado courts would give a prior default judgment.

Without a contrary rule from any Colorado court regarding the collateral estoppel effect of a prior default judgment, and in light of the fact that the Colorado Supreme Court applies the four-part *Bebo* analysis to summary judgments and consent judgments, I conclude that, given this state judgment was in effect a default judgment, Colorado law requires I analyze the collateral estoppel effect of the state judgment using the four-part *Bebo* analysis.  Whether the state judgment was

properly termed a summary judgment or default judgment is irrelevant.

### B. Application of the *Bebo* analysis.

As neither party contests the identity of the parties or the finality of the state judgment, I will address the remaining two *Bebo* elements in turn.

#### 1. Was the issue actually litigated in the prior proceeding?

For an issue to be actually litigated, the issue must have been pled in the prior claim and a determination on that issue must have been necessary to the prior judgment. *In re Tonko*, 154 P.3d 397, 405 (Colo. 2007); *Bebo Constr. Co.*, *supra*, 990 P.2d at 85. In a dischargeability proceeding, the focus is placed on whether the debtor had an opportunity to present his case or to litigate the relevant issues. *See In re Austin*, 93 B.R. 723, 727 (Bankr. D. Colo. 1988). The issue need not be actually and fully tried, so long as the dispute proceeded through all phases of litigation appropriate to the case while providing full and fair protection of litigants' rights. *See id.*

The bankruptcy court should look beyond the state judgment to the entire record from the state proceeding to ensure that all issues given preclusive effect have been actually litigated and presented. *In re Dunston*, 146 B.R. 269, 278 (D. Colo. 1992). The court can deny preclusive effect to the state judgment if the findings were conclusory or the record, pleadings, and affidavits do not enable the bankruptcy court to discern the basis of the facts. *Id.* Where the parties never complete discovery, and the documents, interrogatories, and answers to interrogatories fail to clarify all the facts, the bankruptcy court is under a duty to litigate anew the factual issues necessary to the determination of dischargeability. *See id.* However, where the party seeking to apply collateral estoppel presents evidence that the prior court rendered findings based on actual evidence or that the parties engaged in a meaningful assessment of the facts and then the defendant

made a conscious choice not to contest the entry of judgment, a court may appropriately find the issue was actually litigated.  *See In re Gottheiner*, 703 F.2d 1136, 1138–40 (9th Cir. 1983) (holding that although a party failed to respond to a summary judgment motion against him, where the district court granted summary judgment solely on the record accumulated over the sixteen months during which the party had defended the underlying suit, collateral estoppel could apply); *In re Sukut*, 357 B.R. 834, 839 (Bankr. D. Colo. 2006).

Appellees bear the burden of establishing the issue of fraud was actually litigated and necessarily adjudicated in the prior proceeding.  *Bebo Constr. Co.*, *supra*, 990 P.2d at 85.  As such, Appellees also have the burden of bringing forth an adequate state-court record.  *See In re King*, 103 F.3d 17, 19 (5th Cir. 1997).  Viewing the presented record in its entirety, I hold that Appellees have failed to meet this burden.  Although the state judgment appears to make findings of fact, it is clear from the record that these findings were not based on the court's meaningful assessment of the facts or a weighing of actual evidence.  In finding for Appellees, the state judge ruled on March 18, 2005: "The defendant has failed to respond and the motion is therefore deemed admitted.  Judgment shall enter in favor of the Plaintiff and against the Defendants on the Plaintiff's claims for relief.  Judgment shall also enter in favor of the Plaintiff and against the Defendants on the Defendants' counterclaims.  Counsel for the Plaintiff shall file a proposed form of judgment."  The record reveals that Appellees filed their proposed judgment on April 18, 2005 and it was entered on April 19, 2005, dated *nunc pro tunc* to March 18, 2005.  While the judgment contains more detailed findings, the initial March 18 order demonstrates that the determination of fraud in the state court was conclusory.

Appellees argue this Court should find the issue actually litigated because "a debtor's

substantial participation in litigation over an extended period of time, during which he engages in dilatory and deliberately obstructive conduct that results in default as a discovery sanction, can satisfy the actual litigation requirement." *In re McMahon*, *supra*, 356 B.R. at 302. This exception to the "actually litigated" requirement is generally applied only to prior *federal* judgments as an exception to the general rule that a default judgment from a *federal* court will not be given collateral estoppel effect. *See In re Jordana*, 221 B.R. 950, 953–54 (Bankr. W.D. Ok. 1998); *In re Antonakis*, 207 B.R. 201, 204 (Bankr. E.D. Cal. 1997). Colorado case law has not addressed this exception before. Nevertheless, as I must endeavor to predict how the Colorado Supreme Court would rule were it presented with this exception, I will consider the underlying legal doctrines and policies, and the decisions of the federal courts. *Daitom*, *supra*, 741 F.2d at 1574–75; *Carpenter*, *supra*, 773 P.2d at 566.

Colorado relies on the RESTATEMENT (SECOND) OF JUDGMENTS § 27 (1982) when formulating collateral estoppel principles. *See, e.g., Bebo Constr. Co.*, *supra*, 990 P.2d at 85; *Michaelson v. Michaelson*, 884 P.2d 695, 701 (Colo. 1994). *Comment e* states that applying collateral estoppel where an issue has not been actually litigated "might serve to discourage compromise, to decrease the likelihood that the issues in an action would be narrowed by stipulation, and thus to intensify litigation." Even where the prior issue was not actually litigated, however, "the party's reasons for not litigating in the prior action may be such that preclusion would be appropriate. But the policy considerations outlined above weigh strongly in favor of nonpreclusion . . . . In the case of a judgment entered by confession, consent, or default, none of the issues is actually litigated." *Id*.

The Tenth Circuit has recognized an exception to the RESTATEMENT rule in the context of

11

prior federal judgments "where the losing party has had a full and fair opportunity to participate in the previous litigation, but has engaged in serious obstructive conduct resulting in a default judgment." *See In re Sukut*, *supra*, 357 B.R. at 845 (citing *In re Jordana*, No. 99-6194, 2000 WL 783401, at *1 (10th Cir. June 20, 2000) (unpublished decision)). The "serious obstructive behavior" in *Jordana* included the debtor absconding with and refusing to return his deposition transcript, refusing to cooperate in discovery, refusing to obtain counsel, and refusing to answer the complaint. *See In re Jordana*, 232 B.R. 469, 478 (10th Cir. BAP 1999). Other courts considering the collateral estoppel effect of a prior federal judgment have also found that the issue was actually litigated—despite the RESTATEMENT's rule to the contrary—where the debtor's non-compliance with discovery rules was the product of a willful and bad faith effort to delay resolution of the issues. *See, e.g., In re Docteroff*, 133 F.3d 210 (3th Cir. 1997); *In re Bush*, 62 F.3d 1319 (11th Cir. 1995); *In re Daily*, 47 F.3d 365 (9th Cir. 1995). Although the actual conduct of the debtor varies, these cases make clear that where the prior federal judgment is not based on a review of the factual record, the actual litigation requirement may be satisfied only upon a finding that the debtor deliberately engaged in an abuse of the judicial process. *See In re Gottheiner*, *supra*, 703 F.2d at 1138; *In re Sukut*, *supra*, 357 B.R. at 839; *In re Antonakis*, *supra*, 207 B.R. at 205–06.

"[E]xceptions to discharge are to be narrowly construed, and because of the fresh start objectives of bankruptcy, doubt is to be resolved in the debtor's favor." *In re Kaspar*, 125 F.3d 1358, 1361 (10th Cir. 1997). As Appellees bear the burden of establishing the issue of fraud was actually litigated and necessarily adjudicated in the prior proceeding, Appellees also bear the burden of establishing that an exception to the "actually litigated" rule applies. *See In re King*,

*supra*, 103 F.3d at 19; *Bebo Constr. Co.*, *supra*, 990 P.2d at 85.  Appellees do not meet this burden.

In this case, the details of what transpired in the state proceeding and the bankruptcy court's findings of fact are sketchy.  *See In re Dvorak*, *supra*, 118 B.R. at 624, 626 (holding that the state court record admitted into evidence at the bankruptcy proceeding—which was limited, much like the record here, to a copy of the complaint and the judgments entered—did not contain sufficient information to determine whether the state claims were actually litigated).  The only evidence of willfulness or bad faith proffered by Appellees is the bare assertion that the state court ordered sanctions for failure to comply with orders to compel discovery.  This assertion provides an insufficient factual basis for applying the proposed exception to the "actually litigated" rule.

Under Colorado law, discovery sanctions may be imposed for simple negligence.  *Kwik Way Stores, Inc. v. Caldwell*, 745 P.2d 672, 677 (Colo. 1987).  Even sanctions as severe as default judgment do not require a finding of willfulness or bad faith on the part of the noncomplying party.  *See In re Bass*, 142 P.3d 1259, 1264 (Colo. 2006); *Kwik Way*, 745 P.2d at 677; *Callahan v. Wadsworth*, 669 P.2d 141, 142 (Colo. Ct. App. 1983).  Thus, the discovery sanctions alone are not evidence of serious or obstructive conduct warranting an exception to the "actually litigated" requirement.  Likewise, in the absence of a factual showing of the debtor's misconduct, the fact that Appellant litigated his claim in some form or another for two years before the entry of judgment is insufficient to show the underlying claim was actually litigated.  *See In re Jordana*, *supra*, 232 B.R. at 477 (citing *Antonakis*, *supra*, 207 B.R. at 204–06).  In reviewing a motion for summary judgment, I must draw all inferences in favor of the nonmoving party.  *See Dodge*, *supra*, 203 F.3d at 1197.  I cannot infer from the mere fact that discovery sanctions were levied against

Appellant in the state proceeding that these sanctions were levied because of Appellant's willful, bad faith, or other seriously obstructive conduct. Colorado law provides ample authority for the trial court to levy sanctions in the absence of such wrongdoing. Thus, even if the Colorado Supreme Court were to adopt the "serious obstructive conduct" exception, the exception would not apply to the facts here.

### 2. Were the issues fully and fairly litigated in the state court?

The bankruptcy court will not give collateral estoppel effect to a state court judgment if the debtor was denied a full and fair opportunity to litigate the issues in the prior proceedings. *See In re Austin*, *supra*, 93 B.R. at 728. Such an opportunity is denied when the prior judgment is procured by mistake, fraud, lack of due process, or other similar infirmity. *See id.* The reviewing court has the obligation to review the circumstances under which the prior judgment was entered. *See id.* The prior proceedings need not be perfect. *See State Farm Mut. Auto. Ins. Co. v. Tygart*, 971 P.2d 253, 255 (Colo. Ct. App. 1998).

Under Colorado law, determining whether a party had a full and fair opportunity to litigate requires an analysis of (1) whether the remedies and procedures in the first proceeding are substantially different from the proceeding in which collateral estoppel is asserted; (2) whether the party in the first proceeding had sufficient incentive to vigorously assert or defend his position; and (3) the extent to which the issues are identical. *See In re Water Rights of Elk Dance Colo., LLC*, 139 P.3d 660, 669 (Colo. 2006); *Bebo Constr. Co.*, *supra*, 990 P.2d at 87 (noting also that the scope of this element has not been extensively addressed).

The parties do not dispute that the first and third factors have been met. The first factor is met because the trial procedures of the Colorado courts are substantially similar to the trial

14

procedures of the bankruptcy court. *See In re Sutherland-Minor*, 345 B.R. 348, 353 (Bankr. D. Colo. 2006); *Bennett Coll.*, *supra*, 799 P.2d at 369. The third factor is met because the issue of whether Appellant's actions in regard to the building contract with Appellee were fraudulent are identical in both the prior state proceeding and the bankruptcy proceeding.

The second factor requires an inquiry into the remedies available in the prior action. *See Salida Sch. Dist. R-32-J v. Morrison*, 732 P.2d 1160, 1163–64 (Colo. 1987). If the party's exposure to liability is substantially less in the first proceeding than the second, the party will not be found to have had the same incentive to litigate. *See Grynberg v. Ark. Okla. Gas Corp.*, 116 P.3d 1260, 1265 (Colo. Ct. App. 2005). Where the proceedings in the Colorado case demonstrate that the debtor was unable to mount an effective defense due to the distractions of the pending bankruptcy proceeding, this may show the debtor did not have a full and fair opportunity to present his case. *See In re Dunston*, *supra*, 146 B.R. at 278. Appellant states in an affidavit submitted in support of his response to Appellees' motion for summary judgment in the bankruptcy proceeding that he could not afford an attorney to represent him on the state summary judgment motion and that he believed he did not need to defend the summary judgment motion because it could be discharged in bankruptcy. These allegations raise similar concerns to those raised in *Dunston*, where the court recognized that a party who fails to adequately defend an ongoing state action because he is preoccupied with plans to file for bankruptcy does not have a full and fair opportunity to present his case. *See id.* at 279.

Bankruptcy courts have an obligation to review the circumstances under which the state judgment was entered before giving the state judgment collateral estoppel effect in non-dischargeability proceedings. *See In re Austin*, *supra*, 93 B.R. at 728. In reviewing the

Bankruptcy Court's entry of summary judgment barring Appellant's claims under the doctrine of collateral estoppel, I must construe the record in the light most favorable to Appellant as the non-moving party. *See Dodge*, *supra*, 203 F.3d at 1197. Therefore, I must accept Appellant's assertion that he did not adequately represent himself in the state court action because of his preoccupation with plans to file for bankruptcy. Under *Dunston*, this raises an issue of fact sufficient to overcome Appellees' motion for summary judgment. *See also Browning v. Navarro*, 887 F.2d 553, 562–63 (5th Cir. 1989); *Kelleran v. Andrijevic*, 825 F.2d 692, 694 (2nd Cir. 1987); *In re Austin*, 93 B.R. at 728.

## IV. DETERMINATION OF DAMAGES IN THE STATE PROCEEDING

In light of my ruling above, I do not reach Appellant's third argument on appeal that the state court erred in calculating damages in the state judgment. Although some Circuits allow a debtor to attack a state court's calculation of damages while according collateral estoppel as to the underlying issue of fraud, the Tenth Circuit holds that dischargeability is an "all or nothing" proposition. *See In re Tsamasfyros*, 940 F.2d 605, 608 (10th Cir. 1991) (citing *In re Gerlach*, 897 F.2d 1048, 1051 (10th Cir. 1990)). The state court's determination of damages cannot be given collateral estoppel effect where the state judgment fails the four-part *Bebo* analysis. *See id.* As the bankruptcy court must litigate anew whether Appellant's actions regarding the building contract were fraudulent, so too must the bankruptcy court litigate anew the measure of damages due to any fraud.

## V. CONCLUSION

When a party to a state judgment makes a collateral attack on the state judgment in bankruptcy court, the bankruptcy court has an obligation to review the circumstances in which the

16

state judgment was entered before giving the state judgment collateral estoppel effect in non-dischargeability proceedings. As Appellees move for summary judgment barring relitigation of Appellant's fraud under the doctrine of collateral estoppel, I must construe all allegations and inferences in the light most favorable to Appellant. The record on appeal does not show that the issue of fraud was actually litigated, nor that Appellant had a full and fair opportunity to present his case. Therefore, I reverse the Bankruptcy Court's holding that summary judgment barring relitigation of Appellant's fraud under the doctrine of collateral estoppel was appropriate in this case, and remand to the Bankruptcy Court to determine anew the issue of Appellant's fraud. Because collateral estoppel does not bar relitigation of the underlying fraud issue, the Bankruptcy Court must also relitigate the issue of Appellees' damages, if any.

Accordingly, IT IS ORDERED that the Order Granting, in Part, and Denying, in Part, Plaintiffs' Motion for Summary Judgment by the United States Bankruptcy Court for the District of Colorado, dated September 19, 2006, is REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.

Dated: August __10__, 2007 in Denver, Colorado.

                                        BY THE COURT:

                                           s/Lewis T. Babcock
                                        LEWIS T. BABCOCK, JUDGE